UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

LANCE GOODE

               Plaintiff

vs.

ROGER G. NEWTON, ET AL
                Defendants

-----------------------------------------------------------------X

Case No.
3:12-cv-00754-MRK

SEPTEMBER 7, 2012

## AMENDED COMPLAINT

**FIRST COUNT:**     FALSE ARREST, CIVIL RIGHTS VIOLATION UNDER 42 UNITED STATES CODE § 1983 AND THE FEDERAL CONSTITUTION VS. ROGER NEWTON

1.    The Plaintiff, Lance Goode, is an African American male citizen of the United States and a resident of New London, Connecticut.

2.    The Defendant, Roger Newton, who is also known as Roger G. Newton, Jr., is a white male citizen of the United States and resides at 35 Pheasant Run Road, Stonington, Connecticut.

3.    On October 20, 2010, the Defendant was employed by the New London Police Department as a police officer, Badge No. 612. During the times relevant to this action, the Defendant was acting in his official compacity and is sued both as an individual and in his official capacity.

4.    From 6:00 p.m. to 9:00 p.m. on October 20, 2010 the Defendant was wearing the uniform of the New London Police Department and was on

1

uniformed patrol in a marked City of New London police vehicle, number 193.

5.    At some time after 6:00 p.m. on October 20, 2010 and while it was still light out, the Defendant, without justifiable cause, began following a Honda Accord being operated by the Plaintiff. The Defendant followed the vehicle operated by the Plaintiff as it lawfully traveled over several different New London streets. When the vehicle operated by the Plaintiff lawfully parked in the driveway of a private residence located at 32 Fuller Street, New London, Connecticut, the Defendant parked to the side of the vehicle, approached the Defendant and asked for the Plaintiff's license, registration and insurance card.

6.    Shortly after the Defendant parked next to the Honda which the Plaintiff had parked in the driveway of 32 Fuller Street, another New London police officer arrived and parked his patrol car so that the police video camera was pointed towards the parked Honda and towards the area to the right of the parked Honda. This police officer was Officer Henderson, Badge No. 633.

7.    The video camera referred to in Paragraph (6) above was continuously recording after Officer Henderson parked and left his patrol car.

8.    After the Defendant followed the vehicle the Plaintiff was operating and after the Defendant parked next to it at 32 Fuller Street, the Plaintiff and Officer Henderson went inside the house at 32 Fuller Street so that the Plaintiff could look for automotive insurance information. At this point, it

2

was fully dark outside and the Defendant was alone outside without any other police officers or any other people in the area of the driveway at 32 Fuller Street, New London.

9. While standing in the vicinity of the driveway area between the rear of the parked Honda and the Defendant's parked police cruiser, the Defendant looked left and right and immediately thereafter he intentionally caused a plastic bag to drop to the driveway. This is depicted in the police videotape.

10. A few moments later and while still alone outside, the Defendant then intentionally kicked the white plastic bag he had previously dropped (in the area of the driveway near the rear of the parked Honda) closer to the right front door area of the Honda. This is depicted in the police videotape.

11. Upon information and belief, the same plastic bag that the Defendant dropped on the driveway and then kicked closer to the right front door area is the same plastic bag the Defendant swore to in his police report as being "a clear-knotted baggie with numerous white round pills inside it."

12. In his sworn-to police report, the Defendant represented that he pulled open the glove box and "all the items in it fell [to] the floor" including the "clear-knotted baggie with numerous white round pills inside it."

13. Upon information and belief, this plastic bag of pills did not fall out of the glove box and the Defendant falsely represented that it had. Upon information and belief, in reality the plastic bag of pills claimed to be in the glove box is the same white plastic bag the Defendant had dropped on the

3

driveway when he was alone and thought no one was watching him.

14. The pills in the plastic bag were found to be oxycodone hydrochloride, prescription narcotics which are unlawful to possess without prescriptions.

15. Upon information and belief, the Defendant knowingly and falsely represented in the incident police report that he prepared, signed and swore to that he found the narcotic drugs in the Honda after he opened the glove box and they allegedly fell out.

16. Based on the Defendant's conduct described above, the Plaintiff was detained and arrested without probable cause and was falsely arrested and charged with three felonies: possession of narcotics in violation of Connecticut General Statute § 21a-279(a), possession of narcotics with intent to sell in violation of Connecticut General Statute § 21a-278(b) and possession of narcotics within 1500 feet of a school in violation of Connecticut General Statute § 21a-279a(b).

17. If the Defendant had been found guilty of the three felonies as charged, he would have served a minimum of five years incarceration.

18. The Defendant also charged the Plaintiff with failure to use his turn signal, but this charge, upon information and belief, was a pretext to follow the Plaintiff to stop his vehicle, to harass the Plaintiff, to search the vehicle the Defendant was driving and ultimately to falsely arrest the Plaintiff for the serious felony drug charges the Defendant arrested the Plaintiff for.

19. At no time after the Defendant parked his patrol car next to the Honda did the Plaintiff consent to the entire car being searched. At no time did the

4

Plaintiff consent to the Defendant opening the glove box.

20. On the date of his arrest, the Plaintiff was subjected to being handcuffed, fingerprinted and held in custody for a period of time.

21. The Plaintiff was subsequently arrested about six months later on an unrelated charge. Because of the October 20, 2010 false arrest perpetuated by the Defendant, the Plaintiff's bond on the subsequent charge was set so high that he could not make bond and free himself. Before bond was lowered on the subsequent charge, the Plaintiff spent 56 consecutive days incarcerated, directly as a result of the Defendant's false arrest.

22. In his sworn-to incident report, the Defendant represented, "*the audio and video was activated on vehicle number 50 during this incident.*" This statement is true. When he prepared his report, the Defendant appears to have been unaware that the video from vehicle number 50 was pointed at the area where the Defendant caused the drugs he planted to be dropped as opposed to being pointed down Fuller Street.

23. The actions of the Defendant as described herein, violated the Plaintiff's constitutional rights to be free from false arrests, to be free from unlawful and unreasonable and unconsented to searches and seizures, to be free from arrests without probable cause, to not be the target of profiling and to be free from malicious prosecution, as guaranteed to him by Fourth Amendment of the United States Constitution.

24. After the Defendant's criminal defense attorney obtained access to the

5

videotape showing the events described herein, including that there appeared to be no lawful reason for the Defendant to have followed the Honda the Plaintiff was driving the evening of October 10, 2010, the State of Connecticut dropped all charges against the Plaintiff, including the motor vehicle charges.

25.     As a result of the Defendant's conduct as is alleged herein and as is shown on the videotape and as a result of other alleged misconduct of the Defendant, the New London Police Department suspended the Defendant from the force on January 6, 2012.

26.     On February 10, 2012 the Defendant resigned from the New London Police Department. Upon information and belief, the Defendant's resignation was in exchange for the City of New London and the New London Police Department dropping their internal investigation of the Defendant regarding the Plaintiff's arrest and dropping of the white bag.

27.     As a result of the Defendant's conduct, the Plaintiff's civil rights were violated by the Defendant and the Defendant's acts constituted deprivation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution, made applicable herein by the Fourteenth Amendment, in violation of Title 42, United States Code §§ 1983 and 1988 and the Plaintiff has sustained damages.

**SECOND COUNT:**     COMMON LAW FALSE ARREST AND MALICIOUS
PROSECUTION VS. ROGER NEWTON

1.     Paragraphs (1) - (27) of the First Count are hereby incorporated by

reference in this the Second Count as if fully set forth herein.

28.     The aforementioned conduct of the Defendant, ROGER NEWTON,

constituted false arrest of the Plaintiff and malicious prosecution of the

Plaintiff under the common law of the State of Connecticut.

**THIRD COUNT:**     VIOLATION OF THE CONNECTICUT CONSTITUTION

1.     Paragraphs (1) - (27) of the First Count are hereby incorporated by reference in this the Third Count as if fully set forth herein.

28.     The aforementioned conduct of the Defendant, ROGER NEWTON, violated the Plaintiff's State constitutional rights under Article First, Sections 7 and 9 of the Connecticut Constitution.

**FOURTH COUNT:** FALSE ARREST, CIVIL RIGHTS VIOLATION UNDER 42 UNITED STATES CODE § 1983 AND THE FEDERAL CONSTITUTION AGAINST THE CITY OF NEW LONDON

2.     Paragraphs (1) - (27) of the First Count are hereby incorporated by reference in this the Second Count as if fully set forth herein.

28.     At all times mentioned herein, the Defendant, City of New London, was a municipal corporation in the State of Connecticut and maintained and does maintain a police department whose purpose is to enforce state laws and to provide safety, security, peace, order and protection for the residents of New London, Connecticut.

29.     At all times mentioned herein, the Defendant, ROGER NEWTON, was acting in the performance of his duties and within the scope of his employment as an employee of the City of New London's police department, with all the duties, privileges and responsibilities accorded thereto.

30.     The pretextual stop of the Plaintiff, the search of his car and his person without probable cause, his false arrest and resulting prosecution were caused by the unconstitutional acts of the Defendant City of New London, through its policies, practices and customs, in that it, upon information and belief and the opportunity for further discovery, created and maintained a policy, practice or custom under which the unconstitutional conduct previously alleged occurred, or the Defendant City of New London allowed the continuance of such a policy, practice or custom despite its actual or constructive knowledge of them and the City of New London, through its

9

decision-makers, despite actual or constructive knowledge of the deficiencies and constitutional violations alleged herein, exhibited gross negligence, recklessness and/or a deliberate indifference to the constitutional rights of the Plaintiff and others similarly situated, including unconstitutional misconduct related to the hiring, training, supervision, retention and employment of the individual Defendant, ROGER NEWTON.

31.    The Defendant City of New London's gross negligence, recklessness and/or deliberate indifference to the Constitutional rights of the Plaintiff and others involves the Defendant City's actual or constructive knowledge of the following practices or customs:

     A.    Arbitrary motor vehicle stops done without reasonable cause or suspicion;

     B.    Arbitrary detentions of persons, done without reasonable cause or suspicion;

     C.    Arbitrary stops and investigations of motorists and pedestrians done without reasonable cause or suspicion;

     D.    Arbitrary arrests of persons done without probable cause;

     E.    The failure to properly train its police officers to prevent the conduct described in sub-paragraphs 31(A) - (D) herein.

32.    Other incidents which establish the Defendant City's deliberate indifference and ongoing failure to train its police force including Defendant Newton are the following incidents:

A. ***The Detainment and Arrest of Reuben Miller when there was***
***No Probable Cause to Arrest.***

Mr. Miller was detained and arrested by New London police officers

when the officers had no probable cause to arrest Mr. Miller.

Plaintiff's Exhibit 1 is a signed and witnessed statement by an

eyewitness to the arrest without probable cause of Mr. Miller. The

witness, Mr. Stanley Jurgielewicz, states in part that after an

admitting nurse at SCADD telephoned 911 because they had a

potential client who needed to go to the hospital, the following

happened after Mr. Miller turned around

> "He turned around and continued to talk to his
> girlfriend, facing away from our driveway, when
> the first police officer arrived. Immediately
> running out of his vehicle the officer grabbed
> Reuben Miller from behind and threw him to
> the ground. *At no point did the first officer*
> *identify himself as a police officer or confront*
> *Reuben to place his hands behind his back.* A
> second officer arrived soon after and
> *proceeded to join in the situation by punching*
> *Reuben in the face multiple times. While he*
> *was hand cuffed on the ground the second*
> *officer began to pick up Reuben's head and*
> *smash it to the ground multiple times."*
> (Plaintiff's Exhibit 1, emphasis added.)

Additional evidence that Mr. Miller's arrest was done without New

London police having probable cause is found in Mr. Miller's Notice

of Intent to Commence Action filed by his attorney. It specifically

alleges that one of the four officers "*without announcing his*

*presence and authority as a police officer or issuing a warning to*

*Reuben Miller, jumped on the back of Reuben Miller as he spoke*

*with his girlfriend and attempted to force him to the ground to arrest*

*him, all without probable cause to do so."* (Plaintiff's Exhibit 2,

emphasis added.)

B. **The False Arrest of Francisco Francovilla.**

Attached hereto as Plaintiff's Exhibit 4 are pages 1-23 of the

pending 1983 action, Francisco Francovilla v. City of New London,

et al., Docket #3:11-cv-01216-SRW. Inter alia it alleges that an

Officer O'Hara "did a pat down search" of Mr. Francovilla and that,

"63. Defendant O'Hara searched Mr.
Francovilla's person in an unreasonably
aggressive and physically harmful manner,
causing plaintiff physical injury which required
medical treatment and monetary expense for
diagnosis and treatment.
64. By searching plaintiff's person at all, the
defendants violated plaintiff's federal
constitutional rights under the Fourth
Amendment." (Plaintiff's Ex. 4, paragraphs 63-
64, p. 6.)

Said complaint also alleges that the plaintiff was falsely charged "with

motor vehicle violations concerning a falsely claimed defective right

light and a falsely claimed defective rear marker light." (Id. at

paragraph 73, p. 7.)

Said complaint alleges that Defendant City's police officers Bruno,

Strecker and O'Hara participated in the filing and witnessing of a false

police report and false charges. (Id., Paragraphs 74-75.) Said complaint alleges that the plaintiff was detained, seized and arrested in violation of the plaintiff's Fourth Amendment rights.

Said complaint at Count Eleven alleges the Defendant City of New London has a history and pattern of behavior by its police officers including involving arbitrary motor vehicle stops, arbitrary detentions of persons, arbitrary stops and investigations of motorists, arbitrary interrogations, arbitrary arrests of persons without probable cause and unreasonable and excessive use of force." (Plaintiff's Ex. 4, paragraph 302(A)-(G), pp. 15-16.) Said complaint at Paragraph 308 alleges that the Constitutional violations suffered by the plaintiff

"were the proximate result of the defendant City of New London's regulations, policies, customs and usages, and its failure to properly train or supervise its police officers, particularly including the individually named defendants, concerning motor vehicle stops, detentions of persons, street investigations of persons, street interrogations of persons, searches of persons and, seizures of motor vehicles, all of which involve situations which municipal law enforcement agents repeatedly encounter." (Id.)

As a result of the Defendant City of New London's conduct, the Plaintiff's civil rights were violated by the Defendant and the Defendant's acts constituted deprivation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution, made applicable herein by the Fourteenth Amendment, in violation of Title 42, United States Code §§ 1983 and 1988 and the Plaintiff

13

has suffered humiliation, distress and false arrest.

**FIFTH COUNT:** APRIL 29, 2010 ARREST WITHOUT PROBABLE CAUSE AND USE OF EXCESSIVE FORCE, 42 U.S.C. CODE § 1983, LANCE GOODE VS. TODD LYNCH, WAYNE P. NEFF, LAWRENCE M. KEATING, DAVID McELROY AND KYLE GORRA.

1. The Plaintiff, Lance Goode, is a citizen of the United States and a resident of New London, Connecticut.

2. On April 29, 2010, the Defendant, TODD LYNCH, was employed by the City of New London's police department and he is still so employed. On April 29, 2010, the Defendants WAYNE P. NEFF, LAWRENCE M. KEATING, DAVID MCELROY and KYLE GORRA were employed by the City of New London's police department and are still so employed.

3. At all times mentioned herein, the Defendant, City of New London, was a municipal corporation in the State of Connecticut and maintained and does maintain a police department whose purpose is to enforce state laws and to provide safety, security, peace, order and protection for the residents of New London, Connecticut.

4. At all times mentioned herein, the Defendants, TODD LYNCH, WAYNE P. NEFF, LAWRENCE M. KEATING, DAVID McELROY and KYLE GORRA were acting in the performance of their duties and within the scope of their employment as employees of the City of New London's police department, with all the duties, privileges and responsibilities accorded thereto.

5. On or about April 29, 2010, the Defendant, TODD LYNCH, caused a "no trespassing" letter to be signed by an agent of the New London Housing

Authority so that the Plaintiff, whose mother resided at a Housing
Authority Apartment at 202 Colman Street, New London, would be
banned from going there on penalty of misdemeanor arrest for
trespassing. Defendant TODD LYNCH allegedly posted the letter at 202
Colman Street. The Plaintiff was not given advance notice of this no
trespassing letter.

6.      Upon information and belief, the no trespassing letter referred to in
Paragraph (6) was generated because Defendant TODD LYNCH
misrepresented to the New London Housing Authority that the Plaintiff had
been belligerent to tenants at 202 Colman Street.

7.      On April 29, 2010, as a result of Defendant LYNCH's posting the no
trespassing letter at 202 Colman Street a number of hours earlier,
someone allegedly called the New London police at about 4:00 o'clock in
the morning and said that the Plaintiff was at 202 Colman Street which is
where the Plaintiff's mother lived and at whose home the Plaintiff was
always welcome.

8.      On April 29, 2010 at 4:16 a.m., multiple units of the New London Police
Department were dispatched to 202 Colman Street to search for the
Plaintiff, apparently due to his alleged trespassing, a nonviolent
misdemeanor.

9.      A member of the New London Police allegedly saw the Plaintiff in the
vicinity of the building and Officer Stone started following the Plaintiff on
foot. When the Plaintiff did not stop, "all available units" were then sent to

chase the Plaintiff due to his alleged nonviolent trespassing misdemeanor.

10.     The Plaintiff went to a friend's house where he was welcome and sat
        down on his friend's chair.

11.     New London police officers then entered the house without any warrant
        and without being invited to enter this private residence. The New London
        police officers who entered the house were officers WAYNE P. NEFF,
        DAVID McELROY and KYLE GORRA, defendants herein.

12.     The Plaintiff was unarmed and peaceful. When one officer who had
        barged in asked the Plaintiff to stand up, the Plaintiff refused.

13.     Thereupon Defendant WAYNE P. NEFF summoned Defendant Sergeant
        LAWRENCE M. KEATING to enter the private residence for purposes of
        subduing the Plaintiff with a taser. Defendant KEATING thereupon
        arrived and he also entered the private residence without any warrant and
        without being invited in by the owner or by the occupants. The Plaintiff
        was again asked to stand up and when he refused, Defendant KEATING
        deployed his taser and administered severe electric shock to the Plaintiff's
        person and body two times. At this point Defendants NEFF, KEATING,
        McELROY and GORRA decided to use physical violence to arrest the
        Plaintiff and these four defendants attacked the Plaintiff, smashed his
        head into a wall inside the house, placed handcuffs on him and then
        slammed him to the ground, breaking his elbow, told him he was under
        arrest and then tasered him again.

14.     An ambulance was summoned for the Plaintiff and the Plaintiff was

transported by ambulance to the emergency room of Lawrence &
Memorial Hospital while in police custody.

15.     At the hospital, the Plaintiff received emergency treatment for his injuries.
X-rays confirmed that he sustained a broken elbow. His treatment
records state that the Plaintiff was tasered twice and "dry stunned x 6."
The Plaintiff's fractured elbow was a "fracture to the coronoid process."

16.     In the course of the said New London police officers entering the private
resident at 4:00 o'clock in the morning without a warrant and without
permission in order to allegedly arrest the unarmed Plaintiff without a
warrant for the non-violent misdemeanor crime of trespassing, after the
Defendants tasered the Plaintiff and used physical force and violence to
subdue him, they arrested the Plaintiff for criminal trespass, a
misdemeanor, interfering with an officer in violation of C.G.S. § 53a-167a,
a misdemeanor, assault on a police officer in violation of C.G.S. § 53a-
167c a class C felony carrying a maximum term of imprisonment of 10
years and possession of narcotics in violation of C.G.S. § 21a-279(a), a
felony.

17.     The abuse and physical injury the Plaintiff sustained were caused by the
unconstitutional acts of Defendants NEFF, KEATING, McELROY and
GORRA in that they utilized excessive and unreasonable force against the
Plaintiff in violation of the Fourth Amendment of the United States
Constitution.

18.     The aforementioned tasering and physical subduing of the unarmed

18

Plaintiff deprived him of his rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as enforced through Title 42, United States Code, Sections 1983 and 1988.

19. The Plaintiff was falsely arrested because Defendant LYNCH obtained the "no trespassing" letter based on a pretext that the Plaintiff had been belligerent to tenants when this was not true. The Plaintiff was also falsely arrested because he never should have been followed by the Defendants into the private home unless they had a warrant. The search, the use of excessive force and the arrest of the Plaintiff violated the Fourth Amendment. The false arrest of the Plaintiff and the force used by the Defendants deprived the Plaintiff of his rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, as enforced through Title 42 United States Code, Sections 1983 and 1988.

20. After the New London Housing Authority was contacted by the Plaintiff's attorney, the New London Housing Authority rescinded its "no trespass" letter regarding the Plaintiff because the Plaintiff had not been belligerent to tenants.

21. On June 11, 2010, the criminal trespass misdemeanor charge as well as the other misdemeanor charge and the two felonies were all nolléd by the State of Connecticut prosecutor in Connecticut Superior Court, G.A. 10, New London. At that time, the State prosecutor stated on the record that

19

if the Housing Authority "*had all of the information, they would not have issued the original [no trespass] letter that was issued, and . . . they have subsequent . . . I believe revoked that.*"

22.    As a result of the misconduct of the Defendants described above, the Plaintiff experienced humiliation, false arrest, emotional distress, physical injury, pain, suffering, fear of death, loss of income earning ability while his broken elbow healed, loss of money used to post bond and other financial loss.

23.    The Defendants acted unreasonably, recklessly, with deliberate indifference, and/or with specific intent to deprive the Plaintiff of his aforesaid civil rights, including more specifically:

A.    freedom from physical abuse, coercion, intimidation and serious physical injury;

B.    freedom from the unjustifiable use of force upon him;

C.    freedom from summary punishment without a fair trial;

D.    application of due process of law; and

E.    application of equal protection of the laws.

**SIXTH COUNT:**     APRIL 29, 2010 FALSE ARREST, CIVIL RIGHTS VIOLATION UNDER 42 UNITED STATES CODE § 1983 AND THE FEDERAL CONSTITUTION, LANCE GOODE VS. THE CITY OF NEW LONDON

1.     Paragraphs (1) - (23) of the Fifth Count are hereby incorporated by reference in this the Sixth Count as if fully set forth herein.

24.     The pretextual criminal trespass letter, the chasing of the Plaintiff, the entry into the private home without probable cause, the attack on the Plaintiff, the use of excessive violence and force, the Plaintiff's false arrest and resulting prosecution were caused by the unconstitutional acts of the Defendant City of New London, through its policies, practices and customs, in that it, upon information and belief and the opportunity for further discovery, created and maintained a policy, practice or custom under which the unconstitutional conduct previously alleged occurred, or the Defendant City of New London allowed the continuance of such a policy, practice or custom despite its actual or constructive knowledge of them and the City of New London, through its decision-makers, despite actual or constructive knowledge of the deficiencies and constitutional violations alleged herein, exhibited gross negligence, recklessness and/or a deliberate indifference to the constitutional rights of the Plaintiff and others similarly situated, including unconstitutional misconduct related to the hiring, training, supervision, retention and employment of the individual Defendants, TODD LYNCH, WAYNE P. NEFF, LAWRENCE M. KEATING, DAVID McELROY and KYLE GORRA.

21

25. The Defendant City of New London's gross negligence, recklessness and/or deliberate indifference to the Constitutional rights of the Plaintiff and others involves the Defendant City's actual or constructive knowledge of the following practices or customs:

A. Arbitrary motor vehicle stops done without reasonable cause or suspicion;

B. Arbitrary detentions of persons, done without reasonable cause or suspicion;

C. Arbitrary stops and investigations of motorists and pedestrians done without reasonable cause or suspicion;

D. Arbitrary arrests of persons done without probable cause;

E. The unreasonable and excessive use of force against persons its officer's arrest;

F. The failure to properly train its police officers to prevent the conduct described in sub-paragraphs 25 (A) - (E) herein.

26. Other incidents which establish the Defendant City's deliberate indifference and ongoing failure to train its police force including the individual defendants named in the Fifth Count are the following incidents:

A. *The brutal assault of an unarmed person, Mr. Reuben Miller:* Mr. Miller was the victim of excessive force and violence used against him by four Defendant City of New London police officers. Attached hereto as Plaintiff's Exhibit 1 is a signed and witnessed statement by an eyewitness to the use of such excessive force.

22

The witness, Mr. Stanley Jurgielewicz, states in part that after an admitting nurse at SCADD telephoned 911 because they had a potential client who needed to go to the hospital, the following happened after Mr. Miller turned around

"He turned around and continued to talk to his girlfriend, facing away from our driveway, when the first police officer arrived. Immediately running out of his vehicle the officer grabbed Reuben Miller from behind and threw him to the ground. *At no point did the first officer identify himself as a police officer or confront Reuben to place his hands behind his back. A second officer arrived soon after and proceeded to join in the situation by punching Reuben in the face multiple times. While he was hand cuffed on the ground the second officer began to pick up Reuben's head and smash it to the ground multiple times. Two more officers showed up to the scene, spraying him in the face with mace and yelling at Reuben.* Throughout this whole ordeal the two ambulance personal's faces seemed in utter shock to what was happening to Reuben. After Reuben was detained the admitting nurse, Anne Crane, was crying and stated to the officers that he needed to go to the hospital, but they commented back saying he was being placed under arrest. . . . **At no time was Reuben a threat to his girlfriend, Anne Crane or myself.**" (Plaintiff's Exhibit One, emphasis added.)

B.   This Reuben Miller arrest was also done without probable cause to arrest because the first officer never talked to him or to others to investigate and never told Mr. Miller he was under arrest for something. Instead he just "threw him to the ground." Attached hereto Plaintiff's Exhibit 2 is Mr. Miller's Notice of Intent to

Commence Action. It specifically alleges that one of the four

officers *"without announcing his presence and authority as a police*

*officer or issuing a warning to Reuben Miller, jumped on the back of*

*Reuben Miller as he spoke with his girlfriend and attempted to force*

*him to the ground to arrest him, all without probable cause to do*

*so."* As regards all four officers, said Notice of Intent to Commence

Action alleges that they *"then forced Reuben Miller to the ground,*

*in so doing violently dragging him across the pavement, punching*

*and kicking him in the head, face and body, slamming and grinding*

*his face into the pavement and lifting up his head and pepper*

*spraying him in the face, without cause to do so."* (Plaintiff's

Exhibit 2, emphasis added.)

C.    **The Shooting of Unarmed Suspect Curtis Cunningham.**

Attached hereto as Plaintiff's Exhibit 3 is the plaintiff's amended

complaint in the 1983 action, <u>Curtis Cunningham v. City of New</u>

<u>London, et al.</u>, Docket No. 3:11-cv-01944-SRU. It shows a failure

to train officers in the use of deadly force during the course of an

otherwise lawful detention and arrest. Inter alia, it is alleged that an

Officer Norton

"apprehended the unarmed plaintiff in an
overturned ice delivery truck. Thereafter the
individual defendant, Northup, fired several
rounds into the overturned cab of the truck
striking and severely injuring the plaintiff –
inflicting spinal injuries upon the plaintiff,

24

including paraplegia.

8.   The injuries and losses suffered by the plaintiff were caused by the unconstitutional acts of the individual defendant Northup, in that *he utilized excessive and unreasonable force in violation of the Fourth Amendment to the United States Constitution when he repeatedly discharged his weapon into the plaintiff while he was unarmed.*" (Plaintiff's Exhibit 3 attached, emphasis added.)

Said 1983 complaint accuses the City of New London of "gross negligence, recklessness and/or a deliberate indifference to the constitutional rights of the plaintiff and others similarly situated, including unconstitutional misconduct related to the hiring, training, supervision, retention and employment of the individual defendant Northup." (Id.)

D.   ***The False Arrest of Francisco Francovilla.***

Attached hereto as Plaintiff's Exhibit 4 are pages 1-24 of the pending 1983 action, Francisco Francovilla v. City of New London, et al., Docket #3:11-cv-01216-SRW.  Inter alia it alleges that an Officer O'Hara "did a pat down search" of Mr. Francovilla and that,

"63.   Defendant O'Hara searched Mr. Francovilla's person in an unreasonably aggressive and physically harmful manner, causing plaintiff physical injury which required medical treatment and monetary expense for diagnosis and treatment.
64.   By searching plaintiff's person at all, the defendants violated plaintiff's federal constitutional rights under the Fourth Amendment." (Plaintiff's Ex. 4, paragraphs 63-64, p. 6.)

Said complaint also alleges that the "defendants used unreasonable force in searching" the plaintiff. (Id. para.65.)

Said complaint also alleges that the plaintiff was falsely charged "with motor vehicle violations concerning a falsely claimed defective right light and a falsely claimed defective rear marker light." (Id. at paragraph 73, p. 7.)

Said complaint alleges that Defendant City's police officers Bruno, Strecker and O'Hara in the filing and witnessing of a false police report and false charges. (Id., pages 74-75.) Said complaint alleges that the plaintiff was detained, seized and arrested in violation of the plaintiff's Fourth Amendment rights.

Said complaint at Count Eleven alleges the Defendant City of New London has a history and pattern of behavior by its police officers including involving arbitrary motor vehicle stops, arbitrary detentions of persons, arbitrary stops and investigations of motorists, arbitrary interrogations, arbitrary arrests of persons without probable cause and unreasonable and excessive use of force. (Plaintiff's Ex. 4, paragraph 302(A)-(G), pp. 15-16.) Said complaint at Paragraph 308 alleges that the Constitutional violations suffered by the plaintiff

"were the proximate result of the defendant City of New London's regulations, policies, customs and usages, and its failure to properly train or supervise its police officers, particularly including the individually named defendants, concerning

motor vehicle stops, detentions of persons, street investigations of persons, street interrogations of persons, searches of persons and, seizures of motor vehicles, all of which involve situations which municipal law enforcement agents repeatedly encounter." (Id.)

G. **The False Arrest of Lance Goode by Roger Newton.**

The allegations of Count One in this complaint, <u>Lance Goode v. Roger Newton, et al.</u>, Docket No. 3:12-cv-00754-MRK, allege, inter alia, that the plaintiff was pretextually arrested by being followed by Defendant Newton "without justifiable cause" (Count One, paragraph 5); that the Defendant Newton prepared a false police report (Para. 15) and that "the Plaintiff was detained and arrested without probable cause. . . . " (Paragraph 16).

H. **The False Arrest and Use of Excessive Force Against Donald Gilbert.**

Attached hereto as Plaintiff's Exhibit 5 is the Notice of Intent to Commence Action Against Roger Newton and the City of New London. It alleges that Officer Newton stopped and detained Donald Gilbert "who was lawfully operating a motor vehicle" in New London and that, inter alia, Newton "used excessive force in frisking and searching Mr. Gilbert's buttocks area and genitals." It alleges that after "Mr. Gilbert turned around in pain" after Newton "inflicted pain by improperly frisking him, Roger Newton then used Mr. Gilbert's reaction to charge Mr. Gilbert with interfering with an

officer in violation of C.G.S. § 53a-167a." (Plaintiff's Exhibit 5.)

## I.   *The Unconstitutional Detainment and Use of Excessive Force*

### *Against Andre Gilbert.*

Attached hereto as Plaintiff's Exhibit 6 is the Notice of Intent to

Commence Action Against Roger Newton and the City of New

London involving Mr. Andre Gilbert.  Mr. Andre Gilbert was a

passenger in Mr. Donald Gilbert's vehicle.  Exhibit 6 states in part:

> "ANDRE GILBERT was a passenger in this
> vehicle.  This vehicle should not have been
> stopped by Officer Newton or by the New
> London Police.  Officer Newton, after placing
> Donald Gilbert under arrest, frisked Andre Gilbert
> in a manner which was unauthorized such that
> ROGER NEWTON inflicted pain onto Mr.
> Gilbert's genitals and used excessive force in
> frisking and searching Mr. Gilbert's buttocks'
> area and genitals.  ROGER NEWTON inflicted
> pain by improperly frisking ANDRE GILBERT.
> Andre Gilbert was not arrested." (Plaintiff's
> Exhibit 6.)

27.   As a result of the misconduct of the Defendant City of New London

described above, the Plaintiff experienced humiliation, false arrest,

emotional distress, physical injury, pain, suffering, fear of death, loss of

income earning ability while his broken elbow healed, loss of money used

to post bond and other financial loss.

**SEVENTH COUNT**: COMMON LAW FALSE ARREST AND MALICIOUS PROSECUTION

1.  Paragraphs (1) - (23) of the Fifth Count are hereby incorporated by reference in this the Seventh Count as is fully set forth herein.

24.  The aforementioned conduct of the Defendants TODD LYNCH, LAWRENCE M. KEATING, WAYNE P. NEFF, DAVID McELROY and KYLE GORRA constituted false arrest of the Plaintiff and malicious prosecution of the Plaintiff under the common law of the State of Connecticut.

**EIGHTH COUNT**:    VIOLATION OF THE CONNECTICUT CONSTITUTION VS.

DEFENDANTS LYNCH, KEATING, NEFF, McELROY AND

GORRA

1.    Paragraphs (1) - (23) of the Fifth Count are hereby incorporated by reference in this the Eighth Count as is fully set forth herein.

24.    The aforementioned conduct of the Defendants TODD LYNCH, LAWRENCE M. KEATING, WAYNE P. NEFF, DAVID McELROY and KYLE GORRA violated the Connecticut constitutional rights of the Plaintiff as guaranteed by Sections 4, 7, 9 and 20 of Article First of the Constitution of the State of Connecticut.

**NINTH COUNT**: VIOLATION OF THE CONNECTICUT CONSTITUTION VS. THE CITY OF NEW LONDON

1. Paragraphs (1) - (24) of the Sixth Count are hereby incorporated by reference in this the Ninth Count as is fully set forth herein.

24. The aforementioned conduct of the Defendant CITY OF NEW LONDON violated the Connecticut constitutional rights of the Plaintiff as guaranteed by Sections 4, 7, 9 and 20 of Article First of the Constitution of the State of Connecticut.

WHEREFORE, the Plaintiff claims:

2.    Common law compensatory damages,

3.    Common law punitive or exemplary damages,

4.    Attorneys' fees pursuant to 42 United States Code § 1988,

5.    Punitive damages pursuant to 42 United States Code § 1983,

6.    Costs,

7.    Injunctive relief including mandatory orders to the City of New London to create, implement, oversee and enforce regulations, policies, practices, methods and customs among its police department and police officers to see to it that the unconstitutional practices described herein cease and do not re-occur, including the proper education and training of its police officers so that they understand the constitutional limits to their power as police officers and training them to do their job in a manner that respects and does not violate those constitutional limitations.

The Plaintiff demands trial by jury on all claims.

THE PLAINTIFF,
LANCE GOODE

By: _____
Conrad Ost Seifert, His Attorney
Seifert & Hogan
Juris No. 101448
P.O. Box 576
Old Lyme, CT 06371
Tel. No. 860-434-2097
Fax No. 860-434-3657
Email: conradlaw@aol.com

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------X

LANCE GOODE

                    Plaintiff

vs.

ROGER G. NEWTON, ET AL
                    Defendants

-------------------------------------------------------------------X

Case No.
3:12-cv-00754-MRK

SEPTEMBER 7, 2012

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is fifteen thousand dollars or

more, exclusive of interest and costs.

THE PLAINTIFF,
LANCE GOODE

By: _____

Conrad Ost Seifert, His Attorney
Juris No. 101448
Seifert & Hogan
P.O. Box 576
Old Lyme, CT 06371
Tel. No. 860-434-2097
Fax No. 860-434-3657
Email: conradlaw@aol.com