UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LANCE GOODE | : | NO.: 3:12-cv-00754-MRK |
| | : | |
| v. | : | |
| | : | |
| ROGER G. NEWTON, ET AL | : | OCTOBER 5, 2012 |

### MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

The Defendants, City of New London (hereinafter "City"), Lawrence M. Keating (hereinafter "Keating"), Wayne P. Neff (hereinafter "Neff"), David McElroy (hereinafter "McElroy") and Kyle Gorra (hereinafter "Gorra") (collectively the "City Defendants"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss Counts Four, Six, Eight and Nine of Plaintiff's Amended Complaint, dated September 7, 2012.  Counts Four and Six should be dismissed because they fail to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Counts Eight and Nine should be dismissed, in part, because there is no private right of action under Article First, Sections 4 and 20 of the Connecticut Constitution.  Count Nine should also be dismissed because there is no recognized cause of action for municipal liability under the Connecticut Constitution.

**I. FACTUAL BACKGROUND**

Pursuant to the Court's Order (Doc. No. 43), Defendants hereby incorporate Part I of the City Defendants' Memorandum of Law in Support of their Motion to Dismiss as if fully set forth herein.

<u>Additional Allegations Contained in Count Four</u>

Plaintiff's Amended Complaint alleges the following in an attempt to establish that the City was deliberately indifferent to the conduct of Officer Newton:  The Defendant City of New London's gross negligence, recklessness and/or deliberate indifference to the Constitutional rights of the Plaintiff and others involves the Defendant City's actual or constructive knowledge of the following practices or customs:

    a.    Arbitrary motor vehicle stops done without reasonable cause or suspicion;

    b.    Arbitrary detentions of persons done without reasonable cause or suspicion;

    c.    Arbitrary stops and investigations of motorists and pedestrians done without reasonable cause or suspicion;

    d.    Arbitrary arrests of persons done without probable cause;

    e.    The failure to properly train its police officers to prevent the conduct described in sub-paragraphs 31(a)-(d).

Additionally, Paragraph 32 purports to provide two (2) additional examples of Officer Newton's alleged misconductto demonstrate "deliberate indifference."  Those examples include the arrest of Reuben Miller which occurred on December 14, 2011. (**Am. Compl., Count Four, ¶32(a)**) (hereinafter "Miller incident").  Plaintiff alleges that this arrest was done without

probable cause relying on a statement contained in "Notice of Intent to Commence Action" filed by Mr. Miller stating that he was arrested "without cause to do so." (*Id*.).  The Notice of Intent to Commence Action identifies Officer Joseph Pelchat, Officer Kurt Lavimoniere and Officers John and Jane Doe as the only officers present at the time of the incident involving Mr. Miller. (*Id.*).

Plaintiff also Amended Count Four to include an allegation pertaining to the arrest of Francisco Francovilla on July 6, 2009. (*Id.* at ¶32(b)) (hereinafter "Francovilla incident").  The support for the allegation that the arrest was made without probable cause again stems allegations made in a complaint. (*Id.*).  The officers allegedly involved in the Francovilla incident were Sergeant Michael Strecker, Officer Michael O' Hara, and Officer Jeremy Bruno. (*Id.*).

Additional Allegations Contained in Count Six

In addition to the claims made in Count Four in support of his §1983 claim against the City, the Plaintiff additionally asserts several other incidents that he purports demonstrate the City's deliberate indifference to the training, hiring, supervision, and retention and employment to the individual defendants Lynch, Neff, Keating, McElroy and Gorra.  Plaintiff references the following incidents:[1]

---

[1] Plaintiff's Amended Complaint also references his own arrest on October 20, 2010. (**Am. Compl., Count Six, ¶26(g)**).

- o An incident involving Curtis Cunningham on August 24, 2011 (hereinafter "Cunningham incident") which involves the discharge of Officer Thomas Northup's service weapon during an arrest. (**Am. Compl., Count Six, ¶26(c)**).

- o The arrest of Donald Gilbert on October 25, 2011, wherein Officer Newton allegedly used excessive force in frisking both Donald Gilbert (*Id*. **at ¶26(h)**) and his passenger Andre Gilbert after a traffic stop. (*Id.* **at ¶26(i)**) (hereinafter "Gilbert incident").

## II. LAW AND ARGUMENT

A.  <u>Standard of Review</u>

Defendants hereby incorporate Section II(A) of their Memorandum of Law in support of City Defendants' Motion to Dismiss dated August 1, 2012 as if fully set forth herein.

B.  <u>Count Four of Plaintiff's Amended Complaint Fails to Satisfy the Heightened Pleading Standard Required by *Iqbal.*</u>

Defendants hereby incorporate Section II(B) of their Memorandum of Law in support of City Defendants' Motion to Dismiss dated August 1, 2012 as if fully set forth herein. Additionally, in light of the Plaintiff's Amendments, the Defendants set forth the following arguments in support of their Motion to Dismiss Count Four. Count Four should be dismissed as amended because it fails to state a claim under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

In *Monell*, the United States Supreme Court held that a municipality cannot be held liable on a *respondeat superior* theory. 436 U.S. at 691. "Rather, it is only when the municipality itself commits the misdeed, that is, 'when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992) (quoting *Monell*, 436 U.S. at 694).

Thus, to hold a municipality liable under Section 1983, a plaintiff must prove that the asserted violation of a federally protected right was caused by a municipal policy, custom or practice, or the decision of a municipal policymaker with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "[N]ot every decision by a municipal officer automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 481-82 (1986).

A plaintiff must also demonstrate that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Commissioners v. Brown*, 520 U.S. 397, 404 (1997)(emphasis in original). "That is, a plaintiff must show that the municipal action was taken with the requisite culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* "Absent a showing of a chain of causation between the official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against a municipality." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)(citing *Monell*).

A plaintiff may also "establish municipal liability by showing that a municipal policy or custom existed as a result of the municipality's … inadequate training or supervision." *Russo v. City of Hartford*, 341 F.Supp.2d 85, 107 (D. Conn. 2004). A claim for failure to train "will trigger municipal liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The test for deliberate indifference in the failure-to-train context is objective and requires more than a showing of mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 835, 841 (1994).

The Second Circuit has established three requirements that a plaintiff must meet before a municipality's failure to train or adequately supervise its employees can constitute "deliberate indifference" to its citizens' constitutional rights. First, "a plaintiff must show … that a policymaker knows, to a moral certainty, that its employees will confront a given situation." *Nicholson v. Scoppetta*, 344 F.3d 154, 166 (2d Cir. 2003). Second, the plaintiff must demonstrate that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* at 166-67. Finally, the plaintiff must show that "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 167. In other words, deliberate indifference requires that the need for training be "obvious." *Russo*, 341 F.Supp.2d at 109.

In addition to proving deliberate indifference, the plaintiff must also identify a specific deficiency in the city's training program and establish that the deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional violation. *City of Canton*, 489 U.S. at 391. Thus, a plaintiff must establish that "the officer's shortcomings … resulted from … a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstances. *Odom v. Matteo*, 772 F.Supp.2d 377, 402 (D. Conn. 2011)(quoting *City of Canton*, 489 U.S. at 390-91).

The standards for pleading a *Monell* claim are "stringent and exacting." *Birdsall v. City of Hartford*, 249 F.Supp.2d 163, 173 (D. Conn. 2003). Courts that have considered the issue have held that "[s]ome degree of specificity is required in the pleading of a custom or policy on the part of a municipality. Mere conclusory allegations devoid of factual content will not suffice …. [A] plaintiff must typically point to facts outside his own case to support his allegation of a policy on the part of a municipality." *Thurman v. City of Torrington*, 595 F.Supp.2d 1521, 1530 (D. Conn. 1984); *see also Maye v. Durkin*, No. 3:10-CV-194, 2012 WL 2521101, *1, 5-6 (D. Conn. Jun. 28, 2012); *Zalaski v. City of Hartford*, No. 3:08-CV-601, 2011 WL 6170770, *1, 6-7 (D. Conn. Dec. 8, 2011); *Odom v. Matteo*, No. 3:08-CV-1569, 2010 WL 466000, *1, 9 (D. Conn. Feb. 3, 2010); *Lawrence v. City of Cadilliac*, No. 10-Civ-3324, 2010 WL 5174209, *1, 9 (S.D.N.Y. Dec. 9, 2010)(all dismissing *Monell* claim on a Rule 12(b)(6) motion for pleading deficiencies).

Deliberate indifference then "may be inferred where 'the need for more or better supervision to protect against constitutional violations was obvious,' but the policy maker 'fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." *Lewis,* 3:11CV1451 VLB, 2012 WL 4445077 at *5 (*quoting Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995); *See also Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007)).

In the instant case, none of Plaintiff's additional allegations in either Count Four or Count Six remotely reach the critical mass to constitute deliberate indifference *Monell* and its progeny to support a cause of action for municipal liability pursuant to 42 U.S.C. §1983 under the pleading standard set forth in *Iqbal*.

The additional allegations contained in Plaintiff's Amended Complaint fail to identify a "municipal policy, practice or custom" which he claims caused his injuries, nor has he identified the "decisionmaker" responsible for said "policy, practice or custom." Instead, Plaintiff reiterates the allegations of wrongdoing made against the individual officers and in doing so, attempts to impute liability to the City. As stated above, *Monell* does not allow a claim of municipal liability to lie upon a theory of *respondeat superior* alone. *See* 436 U.S. at 691.

In Count Four, Plaintiff alleges two new allegations in an attempt to demonstrate "deliberate indifference" as to the conduct of Officer Newton. Plaintiff asserts: (1) the Miller incident; and (2) the Francovilla incident. (**Am. Compl. Count Four, ¶¶32(a)-(b)**). In order to properly satisfy the dictates of *Monell*, a § 1983 plaintiff need establish that the facts

8

available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens. *Lewis v. City of W. Haven*, 3:11CV1451 VLB, 2012 WL 4445077 (D. Conn. Sept. 25, 2012) (*citing City of Canton v. Harris,* 489 U.S. 378, 396 (1989)).  Neither of these incidents are sufficient to put the City on actual or constructive notice that the particular omission is substantially certain to result in the violation of the particular constitutional rights of its citizens or that a need for additional training is "obvious" *Russo*, 341 F.Supp. 2d at 109.

This Court (*Bryant, J*). has recently dismissed allegations very similar to those at issue in the instant case.  In *Lewis v. City of W. Haven*, 3:11CV1451 VLB, 2012 WL 4445077 (D. Conn. Sept. 25, 2012), the Plaintiff attempted to set forth a claim under *Monell* against the City of West Haven.  The plaintiff alleged that his Fourth Amendment rights were violated after he was illegally seized and subjected to objective force when he was attacked by a police K-9.  *Id.* at *2.  In separate Counts, the Plaintiff also alleged excessive force and false imprisonment after a car he was passenger was in was stopped and he was subjected to an intrusive cavity search.  *Id.*  Judge Bryant in the *Lewis* case held that the Plaintiff had failed to allege facts which plausibly gave rise to an entitlement to relief under *Monell*.  *Id.* at *7.  In so holding, Judge Bryant reasoned:

> Lewis has conclusory stated that [the Chief] failed or refused to recognize the dangerous and violent propensities of Officers Bloom, Wolf, and police dog Onyx and to take corrective actions.  However, Lewis has not pled any facts that prior to the police dog attack by Bloom and Onyx or the cavity search by Wolf, Karajanis was aware or should have been aware of the dangerous and violent

> propensities of Bloom, Wolf or Onyx. Further, Lewis has not alleged any facts that (the Chief) or other municipal actors had "actual or constructive notice" that their alleged failure to supervise was substantially certain to result in the police dog attack or the inappropriate cavity search. Although Lewis does allege that he complained about Wolf's conduct and that [the Chief] and the City made no meaningful attempt to investigate his complaint, **<u>Lewis's complaint about the improper cavity search by Wolf would not put [the Chief] or the City on either actual or constructive notice that a different officer would engage in an entirely different type of unconstitutional conduct</u>**. Consequently, Lewis's complaint about Wolf did not reveal that Bloom or Onyx had dangerous and violent propensities. Lastly, Lewis has failed to allege any facts that [the Chief's] or the City's conduct was the cause of his subordinates' purported unconstitutional conduct. Lewis's conclusory allegations regarding [the Chief's] failure to supervise are facts that are "merely consistent with a defendant's liability," which stops far short of "the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (citations and internal quotations omitted).

*Lewis*, 3:11CV1451 VLB, 2012 WL 4445077 at *7 (internal citations omitted) (emphasis added).

In the instant case, the Plaintiff has failed to plead any factual content, which would suggest that the City had actual or constructive knowledge of its officers' misconduct sufficient to show "deliberate indifference" and similarly falls far short of adequately pleading "the line between possibility and plausibility of entitlement to relief." *See id.* (*citing Iqbal,* 556 U.S. at 678) Plaintiff does not allege that there were numerous complaints of similar misconduct made against any of these officers prior to his arrest or that the Police Department tacitly condoned such misconduct by failing to conduct meaningful investigations into allegations of police misconduct. *See Maye*, 2012 WL 25221101 at *5-6; *Pace v. Town of Southampton*, 678 F.Supp.2d 79, 88 (E.D.N.Y. 2010). Plaintiff alleges only the Miller and Francovilla incidents.

(**Am. Compl., Count Four, ¶¶32(a)-(b)**).  Neither of these incidents involved Officer Newton. The only officers allegedly present during the Miller incident were Officer Joseph Pelchat, Officer Kurt Lavimoniere and Officers John and Jane Doe as the only officers present at the time of the incident involving Mr. Miller. (*Id.*).  The Francovilla incident involved Sergeant Strecker, and Officers O' Hara and Bruno. (*Id.* **at ¶32(b)**).

Additionally the Miller incident occurred on December 14, 2011 which is more than a year <u>subsequent</u> to the allegations of Count Four which are alleged to have occurred on October 20, 2010.  (*Id.* **at ¶¶4-5**).  The only incident referenced in Count Four of Plaintiff's Amended Complaint that occurred prior to incident at issue in Count Four is the Francovilla incident, which occurred on July 9, 2009.  (***Id.* at ¶32(b))**.  The Francovilla incident involved an alleged illegal search of the plaintiff's person, a completely unrelated constitutional violation to the allegations of Count Four which pertain to the alleged planting of drugs. (*Id.*).  Nor was officer Newton involved in the Francovilla incident. (*Id.*).  Thus, similar to *Lewis*, neither the Francovilla nor the Miller incidents were sufficient to put the City on either actual or constructive notice that an entirely different officer would engage in an entirely different type of unconstitutional conduct.  *See Lewis,* 2012 WL44445077 at *7.  These two instances, one occurring subsequent to the act complained of, and neither involving conduct remotely resembling the conduct complained of in Count Four, planting of drugs, clearly fail to meet the "stringent and exacting" standard.  *Birdsall*, 249 F.Supp.2d at 173.

Nor can it be said that the City was "deliberately indifferent" to Officer Newton's alleged conduct in Count Four in the first instance. In fact, the Amended Complaint, like the Plaintiff's initial Complaint, alleges just the opposite. Paragraphs 24 through 26 in Count One, (incorporated by reference in Count Four), state that the City suspended Officer Newton, Jr. and initiated its internal affairs investigation immediately after learning of the allegations of misconduct against him. **(Am. Compl., Count One ¶¶ 24 – 26)**. It is clear that the City is not deliberately indifferent to such misconduct.

  C. <u>Count Six of Plaintiff's Amended Complaint Fails to Satisfy the Heightened Pleading Standard Required by *Iqbal*.</u>

Count Six should be dismissed for the same reasons as Count Four as discussed above in that Plaintiff has failed to plead any factual content, which would suggest that the City had actual or constructive knowledge of its officers' misconduct sufficient to show "deliberate indifference." In Count Six Plaintiff cites to four (4) additional examples of alleged misconduct by police officer's within the City over a time period of in excess of two years in an attempt to demonstrate "deliberate indifference" as to the conduct of Officers, Neff, Lynch, McElroy and Gorra. The six incidents are the following: (1) the Miller incident (**Am. Compl. Count Six; ¶26(a)**); (2) the Francovilla incident (***Id.* at ¶26(d)**); (3) the Cunningham incident (***Id.* at ¶26(c)**); (4) Plaintiff's arrest on October 20, 2010 as alleged in Count Four (***Id.* at ¶26(g)**); and (5) and (6) both stem from the Gilbert incident. (***Id.* at, ¶¶26(h)-(i)**).

Similar to Count Four, the additional instances cited by the Plaintiff also fail in that they occurred *after* the April 29, 2010 instance at issue in Count Six.  The allegations of Plaintiff's Amended Complaint clearly show that the Miller incident occurred on December 14, 2011, (***Id.* at ¶26(a)**),  the Cunningham incident occurred on August 24, 2011 (***Id.* at ¶26(c)**), Plaintiff's arrest occurred on October 20, 2010 (***Id.* at ¶26(g)**), and the Gilbert incident occurred on October 25, 2011. (***Id.*, ¶¶26(h)-(i)**).  Again, in order to properly satisfy the dictates of *Monell*, a § 1983 plaintiff need establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens.  *Lewis*, 3:11CV1451 VLB, 2012 WL 4445077 at *6 (*citing City of Canton v. Harris,* 489 U.S. 378, 396 (1989)).  The incidents cited in Plaintiff's Amended Complaint postdate the allegations of Count Six by in excess of one years' time.  As such, they clearly fail to provide the City with either actual or constructive notice that constitutional violations may occur in the absence of additional training or demonstrate "deliberate indifference."  *See id.* at *6.

Furthermore, the incidents alleged in Count Six involve different officers and different allegations of unconstitutional misconduct.  None of the incidents alleged in Count Six involve any one of Officers Lynch, Keating, McElroy, Neff or Gorra (**Am. Compl., Count Six ¶¶26(d), (h)-(i)**).  Nor do the incidents alleged pertain to similar misconduct.  The allegations of Count Six are that excessive force was used during Plaintiff's arrest after receiving a call that Plaintiff had violated a "no trespassing" order (***Id.* at ¶¶5-7**) and Plaintiff's refusal to obey

13

officers orders. (*Id.* at ¶¶9, 12-13).  The circumstances Plaintiff alleges instead involve excessive frisks pursuant to traffic stops, (*Id.* at ¶¶26(d), (h)-(i)), alleged planting of drugs (*Id.* at ¶26(g)), or discharge of a service weapon  (*Id.* at ¶26(c)).

Again, the only incident referenced in Count Six that occurred prior to the allegations in Count Six, which occurred on April 29, 2010, is the Francovilla incident which occurred on July 9, 2009.  (*Id.*; at ¶26(d)).[2]  The Francovilla incident involved an alleged illegal search of the plaintiff's person, whereas the incident alleged in Count Six involves excessive force during an arrest pursuant to Plaintiff's violation of a "no trespassing order" and failure to obey police orders. (*Id.* at ¶¶ 5-12).  Accordingly, the Francovilla incident also involved different officers and allegations of completely different allegations of misconduct.  Similar to *Lewis*, the Francovilla incident did not put the City on either actual or constructive notice that a different officer would engage in an entirely different type of unconstitutional conduct of the allegations contained in Count Six.  *See Lewis,* 2012 WL44445077 at *7.

    D.    <u>Counts Eight and Nine of Plaintiff's Complaint Should Be Dismissed Because There Is No Private Right of Action Under Article First, Sections 4 and 20 of the Connecticut Constitution.</u>

 Defendants' hereby incorporate the argument set forth in Part II(C) of the City Defendants' Motion to dismiss as if fully set forth herein.

---

[2] It should be noted that Mr. Francovilla did not commence his lawsuit until July 5, 2011 which is over nine months after the Plaintiff's most recent arrest on October 20, 2010 and more than 14 months after Plaintiff's arrest on April 29, 2010.  Thus, it is questionable whether this incident could impute any knowledge, actual or constructive to support a claim for "deliberate indifference" to the City for this additional reason.

  E. <u>Count Nine of Plaintiff's Complaint Should Also Be Dismissed Because There Is No Recognized Cause of Action For Municipal Liability Under the Connecticut Constitution</u>.

Defendants' hereby incorporate the argument set forth in Part II(D) of the City Defendants' Motion to dismiss as if fully set forth herein.

### III. CONCLUSION

Therefore, for all of the reasons contained herein, and in Defendants' Motion to Dismiss Plaintiff's Amended Complaint dated September 7, 2012 and supporting Memorandum, the Court should dismiss Counts Four, Six, Eight and Nine of Plaintiff's Amended Complaint.

        DEFENDANTS,
        CITY OF NEW LONDON, LAWRENCE M.
        KEATING, WAYNE P. NEFF, DAVID
        MCELROY and KYLE GORRA

        By /s/Michael J. Rose
         Michael J. Rose [ct14803]
         Rose Kallor, LLP
         750 Main Street, Suite 606
         Hartford, CT  06103
         (860) 748-4660
         (860) 241-1547 (Fax)
         E-Mail:  mrose@rosekallor.com

**CERTIFICATION**

  This is to certify that a copy of the foregoing was filed electronically to the following counsel of record this 5th day of October, 2012.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Hope C. Seeley, Esq.
Santos & Seeley, PC
51 Russ Street
Hartford, CT  06106

Conrad Ost Seifert, Esq.
Seifert & Hogan
P.O. Box 576
Old Lyme, CT  06371

Elliot B. Spector, Esq.
Noble, Spector & O'Connor, PC
One Congress Street
Hartford, CT  06114

James Tallberg, Esq.
Kateryna Lagun, Esq.
Karsten & Tallberg, LLC
8 Lowell Road
West Hartford, CT 06119

                  __/s/Michael J. Rose_____
                  Michael J. Rose